REARDON v. THE MISSOURI PACIFIC RAILWAY COMPANY, *Appellant.*

Division Two, February 28, 1893.

1. **Pleading**: NEGLIGENCE: RAILROAD. A petition in an action against a railroad for personal injuries caused by the company's negligence in running over plaintiff's leg when he was in a known exposed position in its yards is not fatally defective because it does not aver whether plaintiff's relation to the company was that of trespasser or servant.

Reardon v. The Mo. Pac. Ry. Co.

2. **Negligence**: RAILROAD: EVIDENCE. The trial court did not commit error in the admission of evidence that the engineer and fireman were in charge of the colliding engine.

3. ——: ——: ——. Nor was there error in the admission of evidence as to plaintiff's occupation before the injury and as to the state of his health, these being facts necessary to enable the jury to estimate the damages, if any.

4. **Evidence**: WAIVER. The admission of evidence previously excluded renders the propriety of the exclusion immaterial.

5. **Negligence**: RAILROAD: TRESPASSER: QUESTION FOR JURY.—The evidence tended to show that plaintiff stepped on defendant's track in its yard, that almost immediately the engineer of the approaching locomotive sounded the danger whistle, when plaintiff turned his head and looked back in the direction of the engine and at once fell backward on the track and seemed to be struggling to get off, that the train was running from seven to twelve miles an hour and could have been stopped in a distance varying from seventy-five to four hundred feet, but that the engineer did not reverse the locomotive or apply the sand box and ran over plaintiff's leg. *Held*, that even if plaintiff was a trespasser it was for the jury to determine whether the company's servants used ordinary care, after plaintiff's peril became known, to avert the accident.

6. ——: ——: ——. The engineer after seeing plaintiff's exposed position was required to use all means in his power consistent with his own safety and that of those on board to avoid injuring him.

7. ——: ——: ——. The engineer was not required to stop his train until he saw plaintiff was in a condition of peril.

8. ——: ——: INSTRUCTION: ERROR IN APPELLANT'S FAVOR. An instruction given at defendant's instance which exonerated the company from liability unless the injury to plaintiff was wilfully committed, although erroneous and also inconsistent with instructions given in the case, will not cause a reversal of the judgment, it being error in appellant's favor.

9. **Negligence**: TRESPASSER. The law is well settled in this state that the defendant is liable even to a trespasser if it fail to use ordinary care to avoid injuring him after discovering his peril.

*Appeal from Johnson Circuit Court.*—HON. C. W. SLOAN, Judge.

REVERSED AND REMANDED.

This action was begun in the circuit court of Cass county, and a change of venue granted to Johnson county.

The petition alleges that, while plaintiff was on the track of the defendant, in an exposed and dangerous condition, the servants of the defendant, who were controlling, running and managing its cars, ran the same upon and over plaintiff's right leg; that at the time they were running said locomotive and cars in a careless, negligent and reckless manner; that said servants and agents could and in fact did see the plaintiff upon the track in such perilous position in due time to have checked or stopped said cars and averted the injury to plaintiff, and avers that by reason of said negligence he lost his leg and was damaged in the sum of $20,000.

The answer was a general denial and contributory negligence. Reply as to new matter.

The case was tried on the fifteenth day of May, 1889, and the evidence adduced at the trial tended to show that on the morning of the accident defendant's Mogul engine number 906 was pulling a local freight train through the yards of defendant at Pleasant Hill; that plaintiff had gone to said yards to see his brother-in-law, A. H. Page, who was an engineer in defendant's employ, and whose engine was standing on track number 2 on the south side of the main track, to learn from said Page, whether his (plaintiff's) brother would pass through Pleasant Hill, that he might take a lunch to him; that when plaintiff left Page's engine he went directly to and upon the main track and started to walk east, as though going down to the Wyoming street crossing, where he would leave the yard to go direct to his mother's house, which was a little west of the line due north from Page's engine. The plaintiff himself testified that he was not going to the crossing,

but was going diagonally northeast across the track and out of the yard. The preponderance of the evidence showed that he took several steps east while between the rails of the main track; at the time engine number 906 with a train of cars attached to it was approaching from the west; that almost immediately after plaintiff stepped upon the track, the engineer sounded the alarm or danger whistle—being several short blasts. Plaintiff upon hearing the whistle turned his head, looked over his right shoulder in the direction of the approaching engine and at once fell backwards on the track. He was then with his head southwest, his legs being across the south rail and his feet southeast. He rolled over to the east turned upon his face, and appeared to be struggling to get himself entirely off the track, and succeeded in doing so with the exception of his right ankle and foot which were run upon by the train.

Plaintiff himself testified that when he looked back his toe tripped upon something, and he fell forward between the rails, then rolled over, and got all of his person off the track except his right foot and ankle. It also appeared that plaintiff had, prior to the injury, suffered a paralytic stroke on his left side, and that said stroke disabled him from using his left arm and leg with freedom. There was a vast amount of evidence adduced by both parties, and, as is usual in such cases, there was a great diversity of opinion among the witnesses upon the questions of the distance at which the engine was from plaintiff at the time he got upon the track; the distance at which he was from the engine at the time he fell upon the track; the distance within which the train could have been stopped; its speed at the time, and as to the best means of stopping an engine under such circumstances.

The engineer testified he did not reverse his engine nor apply sand.   He was asked if on a former trial he did not answer that the most effectual way to stop an engine was to reverse it, and he answered "Oh, yes." And when asked why he did not reverse his engine on this occasion, said, "Perhaps I didn't think of it at the time."   The evidence on part of plaintiff tended to show the train could have been stopped in a distance of from seventy-five to one hundred feet, and on part of defendant from three hundred to four hundred feet. The train was running from seven to twelve miles an hour.

The jury returned a verdict for plaintiff for $4,500.

The court gave the following instructions for the plaintiff:

"1.  The court instructs the jury that if they believe from the evidence that plaintiff was struck and injured by the locomotive of the defendant, as stated in the petition; that the agents of the defendant, in charge of said engine, saw plaintiff in a position of imminent danger before he was struck; that the position of plaintiff was such that an ordinarliy prudent person running a locomotive would have believed that he was not going to be able to get off the track in time to avoid the injury; that the agents of defendant running said locomotive failed to exercise ordinary care—that is, failed to use their ordinary means and appliances for stopping the engine and train—after plaintiff's condition was seen; and that if ordinary care had been used by said agents after plaintiff's perilous position was seen, that the train would have been stopped or checked and the injury averted, then defendant is liable and you should find for the plaintiff.

"2.  If the jury find and believe from all the evidence in the case that the plaintiff was on the track of defendant in the town of Pleasant Hill, Cass county,

Missouri; that the agents and servants of defendant, operating an engine and cars of defendant on its line of railway in said town of Pleasant Hill, saw the plaintiff while so doing, in front of said engine and cars, and *became aware that said plaintiff was in a dangerous condition* in time to have so stopped or slackened the speed of said engine and cars *in time to have averted the injury to plaintiff* in safety to themselves and the said engine and cars, but failed to do so, then the immediate cause of the injury was the negligence and want of care of defendant's servants and agents, directly causing or resulting in the injury of the plaintiff, Reardon; then the jury are instructed that the defendant is responsible for such negligence and carelessness on the part of its agents and servants, and the jury will find for plaintiff.

"3. The jury are instructed that except at a public road and a street crossing a railroad company is entitled to the exclusive use of its track, and any person walking thereon, except at such places, is wrongfully on such track; yet, the fact that such person is on the property wrongfully and negligently does not discharge them from the observance of due care toward him *after he is discovered in a dangerous and exposed condition* by those in charge; nor does the fact of his so being on the track give defendant or its employes in running *trains the right to run upon and injure him* if it can be avoided by any means in the power of such employes consistent with their own safety and that of the engine and cars *after the dangerous position of such person was discovered,* although the plaintiff was wrongfully and improperly on the track of defendant, and was guilty of negligence in going thereon; yet, if the jury believe from the evidence that those in charge of the engine and cars could, *by a proper observance of their duties,* have stopped or so checked or slackened the speed of the engine and cars by *any means* in their power consistent with their

safety and that of the engine and cars, so as to have prevented the accident at any time after they saw him on the track, *and the danger to which he was exposed,* but that they failed to use the means in their power consistent with their safety and that of said train, in order to stop or check said engine and cars, or to prevent said accident, then the persons in charge of the engine and cars were guilty of negligence, for which defendant is responsible.

"4. The jury are instructed that it is negligence on the part of any person to go upon a railroad track at any point other than a street or public crossing; yet, if the jury believe from the evidence in this cause that Edgar Reardon went upon the track of defendant and thereby was guilty of negligence, but that he was injured by the negligence of the defendant as the direct cause of the injury, which negligence of the defendant occurred after the said Reardon was discovered upon the track by defendant's servants in charge of the engine in time to have stopped the engine and train with safety and thereby have averted the calamity, then the defendant is liable; and if the jury so believe from the evidence they will find for plaintiff.

"5. If the jury believe and find from the evidence in this case that on the eleventh day of April, A. D. 1889, the defendant by its agents, servants and employes was running and operating an engine with cars attached on and over its track in the city of Pleasant Hill, Cass county, Missouri, and whilst so running and operating an engine with cars as aforesaid, negligently and carelessly ran said engine and cars upon and over said plaintiff's right foot and ankle, thereby causing the injuries mentioned in plaintiff's petition, and for which this suit was brought, and that said engine and cars were so run in the manner aforesaid upon plaintiff after the agents and servants in charge of

said engine and cars became aware of the presence of the plaintiff on the track of defendant; if the jury shall find from the evidence that either of said agents or servants did so become aware of the presence of plaintiff upon said track, and of his dangerous and exposed condition on said track in time to have so checked and stopped said engine and cars in time to have averted said injury to plaintiff, and failed to do so, then the plaintiff is entitled to recover.

"6. The jury are instructed that it is negligence on the part of any person to go on a railroad track at any point other than at a street or public crossing; yet, if the jury believe and find from the evidence in this case that plaintiff went upon the track of defendant and was thereby guilty of negligence, but that he was run upon by the engine and cars of defendant, and did thereby receive the injuries complained of in the petition, by and through the negligence and carelessness of defendant through its servants and agents, as the direct cause of the injury, which negligence and carelessness of the defendant occurred *after the said plaintiff, Edgar Reardon, was discovered upon the track* by defendant's servants and agents in charge of the engine and cars, in an exposed and dangerous position, in time to stop said engine and cars or so check the speed of same with safety to themselves and cars, and thereby have averted the injury, but failed to do so, then the defendant is liable; and, if the jury so believe and find from the evidence, they will find for plaintiff.

"7. You are further instructed, that if you find for the plaintiff, in estimating his damages, you will take into consideration his age at the time he received the injury, his occupation, his loss of time, his impaired ability or capacity to earn a livelihood, if any you find has resulted therefrom, the cost and expenses he incurred for reasonable and necessary medical and surgical.

treatment, also his pain and sufferings and anguish, if any, resulting from the injury as shown from the evidence and not to exceed the sum of twenty thousand ($20,000) dollars.''

To which action of the court in giving said instructions and in giving each of said instructions defendant excepted at the time and saved its exception.

The court gave the following instructions for defendant:

''The jury are instructed that plaintiff had no legal right to be on the railroad track; the track at that place not being a crossing or any part of a public highway was private property; that it was not built to be walked upon by the public, and the fact that persons did walk upon it, however frequent and however common, does not change the proposition of law. The plaintiff had no right to be there and should not have been there. It does not follow, however, that because he was there unlawfully that the defendant company could run him down; but it does follow that he being on private property of the company on a track which is used for a purpose which is dangerous to human life, well known to him, that he being in a place where he ought not to have been, that he was bound to use every precaution, every diligence, every care against the possibility or probability of any danger which might happen to him there.

''The jury are further instructed that defendant is liable in this case only if its servants failed to exercise ordinary care to prevent the injury, after they became aware of the danger to which plaintiff was exposed; and by ordinary care is meant such care as would ordinarily be used by prudent persons for performing a like service under similar circumstances. Defendant in this case ought not to be held liable by anything short of proof that its agent in charge of said train negligently

failed to exercise reasonable care to avoid running upon or over the plaintiff when and after they actually became aware that he was in an exposed and dangerous position; and it ought also to appear that they then had the time and opportunity to have avoided the injury, and could have done so by the use of reasonable care in that behalf."

"6. The court instructs the jury that before the plaintiff can recover in this action it devolves on him to prove the following facts:

"*First.* That he was struck and injured by the locomotive engine of defendant.

"*Second.* That the agent of defendant saw the plaintiff in a position of imminent danger before he was struck.

"*Third.* That the petition of plaintiff was such that an ordinarily prudent person engaged in running a locomotive would have believed that he was going to be able to get off the track.

"*Fourth.* That agents of defendant, running said locomotive, failed to exercise ordinary care after plaintiff's condition was seen.

"*Fifth.* That if ordinary care had been used by said agents after plaintiff's perilous position was seen, the train would have been stopped or checked and the injury averted. And if he has failed to prove either one of the above facts by a preponderence of the evidence in the case, then he is not entitled to recover and your verdict must be for the defendant.

"7. The court instructs the jury that an engineer in charge of an approaching engine seeing a person upon the track in front of him has the right in the absence of knowledge and of any fact that would arouse his suspicions to assume on seeing such person that he is in possession of all his senses and of the free use of

his limbs and that he will use them as men of ordinary prudence do to avoid any danger to himself.

"8. The court instructs the jury that it is the duty of every person when entering upon a railroad track to listen for approaching trains and a failure to do so constitutes negligence on the part of such person. And in this case if the jury find and believe from the evidence in the case and circumstances in evidence that plaintiff at the time he entered upon defendant's track was partially paralyzed or in any way disabled so as not to have the free and full use of his legs so as to get himself out of a position of danger to which he might become exposed, then it was his duty to exercise an increased degree of diligence to keep out of a position of danger and the failure to do so would constitute negligence on his part.

"9. Although the jury may believe from the evidence that the engineer in charge of the engine that struck plaintiff did not reverse his engine, yet he had a right to presume that plaintiff would get off the track on the approach of the engine, and if he, said engineer, acted upon his judgment and did what he judged was most likely to prevent an injury to plaintiff by sounding the danger signal and applying the steam brakes, then the omission to reverse his engine was not negligence.

"10. If the jury believe from all the facts and circumstances in the case that plaintiff's injuries were caused by plaintiff's placing himself in a position of danger, then plaintiff is not entitled to recover, unless you shall further believe from the evidence that the agent of defendant, engaged in running its engine, wilfully ran said engine upon plaintiff after plaintiff's position was seen by him, when, if he, said agent, had exercised ordinary care after becoming aware of said danger, he could have stopped said engine in time to have avoided the injury.

"11. If the jury shall believe from the evidence that the accident which resulted in plaintiff's being injured would not have happened but for his being partially paralyzed, which caused him to fall upon the track a short distance in front of defendant's engine, then plaintiff is not entitled to recover unless they shall believe from the evidence that the servant of defendant engaged in running its engine could, by the exercise of ordinary care, have stopped said train after the locomotive engineer saw plaintiff fall down upon the track, and that he negligently failed to do so.

"12. The court instructs the jury that plaintiff, from the time he entered upon defendant's grounds and track up to the time of his injury, was a trespasser thereon and the agents and servants in charge of the defendant's engine and train owed plaintiff no duty until the engineer in charge of said engine actually saw the plaintiff in a position of danger, such that he would be run upon or over by said engine unless the same was stopped; and there was no breach of duty or act of negligence on the part of said engineer until said engineer actually saw plaintiff in such position of danger.

"13. The court instructs the jury that it is not enough to enable plaintiff to recover for him to show that it was a possibility for the agent of plaintiff running its locomotive to have stopped its train after plaintiff's dangerous position was discovered, but he must show that, if ordinary care had been exercised by said engineer, said engine could have been stopped.

"14. The court instructs the jury that it is not enough to enable plaintiff to recover to show that he was struck and injured by one of defendant's locomotives. Such facts alone and of themselves do not even raise a presumption of negligence on the part of the defendant; but before the plaintiff can recover in

this action he must not only prove that he was struck by said locomotive engine but he must show by a preponderance of the evidence in the case that the agents of defendant running said engine were guilty of some act of negligence directly contributing to his injury, after said servants saw the plaintiff in such a perilous position, if he was in a position of peril and danger; that an ordinarily prudent person running a railroad locomotive would have seen and known that the plaintiff was in imminent danger, and, after so seeing and knowing, continued to run said locomotive upon and against plaintiff, when the same could have been stopped after the plaintiff was in said position, if ordinary care had been used by said locomotive engineer. And unless plaintiff has proven the above facts to your satisfaction by a preponderance of the evidence in the case, your verdict must be for the defendant.

"15. In this case the only negligence complained of upon which plaintiff can recover is the negligence of the agents and servants in charge of defendant's locomotive and cars in failing to stop said engine or check it so as to prevent the injury, when by the exercise of ordinary care on their part they could have done so.

"16. The court instructs the jury that the defendant's locomotive engineer was not bound to stop the train as soon as he saw plaintiff upon defendant's track, nor attempt to do so, but he had the right to presume that plaintiff would get off the track and was only required to stop said train after he became aware of the fact that plaintiff was in such a position of danger that would have led a reasonable, prudent person, engaged in running a locomotive engine, to suppose that plaintiff would not get off the track. If, therefore, the jury shall believe from the evidence plaintiff's position on the track was such that a reason-

able, prudent person, engaged in running a locomotive, would have supposed he would have gotten off the track; that said locomotive engineer did not become aware that plaintiff was not going to get off the track until the locomotive was so close to plaintiff that it could not, by the exercise of ordinary care, have been stopped in time to avoid striking and injuring him, then there can be no recovery in this case and your verdict must be for the defendant.''

The court refused the following instructions asked by defendant:

"1. The court instructs the jury that under the pleadings and all the evidence in this case the plaintiff cannot recover and your verdict must be for defendant.

"2. The court instructs the jury that the uncontradicted evidence in this case shows that the plaintiff was a trespasser upon the defendant's track at the time and place he was injured, and there is no evidence in this case, nor is it averred in the amended petition upon which the cause is tried, that the injury to plaintiff was wantonly or wilfully inflicted upon him by the agents or servants of defendant and the jury should find their verdict for the defendant.

"3. The jury are instructed that plaintiff had no legal right to be upon the railroad track; the track at that place, not being a crossing or any part of a public highway, was private property; that it was not built to be walked upon by the public; and the fact that persons did walk upon it, however frequent and however common, does not change the proposition of law. The plaintiff had no right to be there, and should not have been there. It does not follow, however, because he was there unlawfully, that the defendant's company could run him down; but it does follow, that he being on private property of the company on a track which is used for a purpose which is dangerous to human life,

well known to him, that he was bound to use every precaution, every diligence, every care against the possibility or probability of any danger which might happen to him there.

"And in this connection the jury are instructed that defendant is only liable for wilful or wanton acts of its servants in charge of the engine and train that ran upon plaintiff, and by that is meant that defendant's servants engine and train, after they actually became aware that plaintiff was in an exposed and a dangerous position upon defendant's track, wilfully or wantonly, ran said engine upon plaintiff, and unless the jury so believe and find from the evidence in this case, they must find for defendant, and the burden of proving these facts by a preponderance of the evidence rests upon plaintiff.

"4. The court instructs the jury that it is not only a right that the law guarantees to a railroad company, but its duty to the public requires expedition in hauling and transporting freight and passengers in its yards, and, at such points other than at public crossings, the servants in charge of its locomotives are not required to be constantly watching for trespassers, but the law requires those who leave the highways, and the protection there given by the law, to use the utmost care and diligence in looking after their welfare. And in this case the plaintiff at the time he was injured was a trespasser upon defendant's tracks, and when he went into defendant's yards, and upon defendant's tracks, he voluntarily took upon himself all danger which he might find himself exposed to that he could prevent by the use of the utmost care upon his part."

And defendant duly excepted.

Motions in arrest and for new trial were duly filed and overruled.

*H. S. Priest* and *H. G. Herbel* for appellant.

(1) The court erred in overruling defendant's objections to the introduction of any evidence, on the ground that the petition failed to state a cause of action against it. *Wagner v. Railroad,* 97 Mo. 520; *Railroad v. Dean,* 92 Ind. 459. (2) The court erred in admitting incompetent and irrelevant evidence offered by plaintiff, and in excluding competent and relevant testimony offered by defendant. *State v. Blackman,* 51 Mo. 319; *O'Leary v. Rowan,* 31 Mo. 117; *Gumb v. Railroad,* 114 N. Y.; *Railroad v. Ware,* 84 Ky. 267; *Groll v. Tower,* 85 Mo. 250; *Edington v. Ins. Co.,* 77 N. Y. 568; *Irving v. Levy,* 16 S. W. Rep. 11; *McKinney v. Railroad,* 104 N. Y. 352; *Brown v. Ins. Co.,* 32 N. W. Rep. 610; *Hunt v. Blackburn,* 128 U. S. 464. (3) The court erred in overruling defendant's demurrer to the evidence at the close of the case. *Tyler v. Kelly,* 15 S. E. Rep. 509. (4) The court erred in giving the instructions asked by plaintiff. *Grant v. Railroad,* 25 Mo. App. 232; *Rine v. Railroad,* 88 Mo. 399; *Kleiber v. Railroad,* 107 Mo. 247; *Clarke v. Hammerle,* 27 Mo. 70; *Mansur v. Botts,* 80 Mo. 658; *Barr v. Railroad,* 105 Mo. 557; *Buddenberg v. Railroad,* 18 S. W. Rep. 970; *Bell v. Railroad,* 72 Mo. 260; *Guenther v. Railroad,* 95 Mo. 295; *Barker v. Railroad,* 98 Mo. 253. (5) The court erred in refusing the instructions asked by defendant. *Barker v. Railroad,* 98 Mo. 253; *Williams v. Railroad,* 96 Mo. 282; *Thomas v. Babb,* 45 Mo. 384.

*W. L. Jarrott* and *A. A. Whitsitt* for respondent.

(1) If negligence of defendant directly contributed to the injury—if, after the agents and servants of defendant saw the plaintiff fall upon the track and saw his perilous position, they could have so checked or

stopped the engine and cars in time to have averted the injury to plaintiff, with safety to themselves and the cars, but failed to do so, then the defendant is. liable. *Rine v. Railroad*, 100 Mo. 228; *Pope v. Railroad*, 99 Mo. 400; Shearman & Redfield on Negligence [3 Ed.] secs. 25, 36, p. 843; *Railroad v. Middleworth*, 46 Ill. 496; *Railroad v. Coleman*, 31 American & English Railway Cases, 390; *Railroad v. Sympkins*, 6 American & English Railway Cases, 11; *Tennenbrook v. Railroad*, 6 American & English Railway Cases, 8; *Railroad v. Black*, 89 Ala. 313. (2) Unless defendant's servants exercised ordinary care after they were apprised of the danger to which plaintiff was exposed, the plaintiff may recover. *Railroad v. Merter*, 52 N. W. Rep. 1099; *Dickson v. Railroad*, 104 Mo. 491; *Clampit v. Railroad*, 50 N. W. Rep. 673. (3) It never was the legal right of the railroad company to refuse to use all possible means to stop a train to avoid accident, regard being had to safety of themselves and the train. *Railroad v. Humphrey*, 15 American & English Railway Cases, 472. (4) That the evidence made out a case on which the plaintiff was entitled to recover, if the jury believed the facts which it tended to prove is no longer open for argument in this state. *Pope v. Railroad*, 99 Mo. 400; *Jennings v. Railroad*, 99 Mo. 394; *Kelly v. Railroad*, 95 Mo. 279; *Sullivan v. Railroad*, 97 Mo. 113. (5) Negligence of railroad companies is a mixed question of law and fact. *Railroad v. Brenig*, 90 Am. Dec. 49. (6) The petition is sufficient, and the instructions given properly submit the question at issue to the jury. *Rive v. Railroad, supra; Brown v. Railroad*, 99 Mo. 310. (7) Parties are concluded by their own instructions, whether absolutely correct or not. *Jennings v. Railroad*, 99 Mo. 394. (8) A party cannot complain in appellate court of instructions which were too favorable to him. *State v. Stewart*, 90

Mo. 507; *Mangold v. Railroad,* 24 Mo. App. 52; *Ball v. Independence,* 41 Mo. App. 469. Nor can the defendant in this case complain that an instruction given at his instance conflicts with one given for the plaintiff, as such conflict constitutes error in defendant's favor. *Vail v. Railroad,* 28 Mo. App. 372. The court is not bound to define reasonable or ordinary care in an instruction, unless asked to do so. *Johnson v. Railroad,* 96 Mo. 340. The instructions fairly submit the case upon the whole evidence, and the evidence clearly supports the verdict. The judgment will not be reversed because of a seeming conflict in the instructions. *Barry v. Railroad,* 98 Mo. 62. They should be construed as a whole. *State v. Matthews,* 98 Mo. 125; *Riley v. Railroad,* 98 Mo. 600; *Harrington v. Sedalia,* 98 Mo. 583; *Wetzel v. Wagner,* 41 Mo. App. 504. (9) Running as defendant was through a town of two thousand five hundred inhabitants, in the vicinity of a station, it must exercise care and caution commensurate with the risk of accident at such places. 2 Rorer on Railroads, p. 858; *Whalen v. Railroad,* 60 Mo. 323. (10) The testimony of physicians, Drs. Bolinger and Dawes, properly excluded. Revised Statutes, 1889, sec. 8925; *Gartside v. Ins. Co.,* 76 Mo. 448. The evidence of an attending physician, if offered by the patient, is competent; where it is offered by the opposing party, the physician cannot testify against the objection of the patient. *Groll v. Tower,* 85 Mo. 249. Nor can he tell indirectly that which the statute forbids him to tell directly. *Sheeter v. Breckenridge,* 23 Mo. App. 244. (11) Evidence showing the plaintiff's earnings prior to the injury, and the extent to which they were diminished in consequence of the injury, was rightfully admitted as indicating a proper element of compensation to which the plaintiff was

entitled. *Grievand v. Railroad*, 33 Mo. App. 458. Also as to his age. *Mitchell v. Plattsburg*, 33 Mo. App. 556. (12) Permanent injuries, including expense of being cured, are all proper elements of damage, and the instruction is correct. *Stephens v. Railroad*, 96 Mo. 207.

GANTT, P. J.—I. The petition is not obnoxious to the criticism of defendant's counsel that it fails to state a cause of action. The alleged defect consists in not stating the relation plaintiff bore the defendant. The point is without merit. The petition stated a case of negligence, for which defendant would have been liable to plaintiff whether he was a trespasser or servant of the company. It is not a model pleading but it stated the case, and is unquestionably good after verdict.

II. There was no error in the admission of the evidence of John Hœfer. He testified without objection that there were two men in charge of the portion of the train attached to the engine, the engineer and fireman. The plaintiff had a right to place all the facts before the jury. This was material, competent evidence. There is in it no suggestion that any others were necessary either in the evidence or instruction.

III. Equally untenable is the objection to Mrs. Reardon's evidence as to plaintiff's occupation before he was hurt, and the condition of his health. These facts were eminently proper to enable the jury to form a correct estimate of the damage, if any.

IV. The witness Shelman's answer to the question limiting his experience to trespassers on the track *in the country* was improperly excluded, but the discussion has been rendered immaterial by the court's subsequently permitting him to answer it.

V. The testimony of plaintiff's physicians, Drs. Dawes and Bolinger, was clearly inadmissible under the statute. Revised Statutes, 1889, sec. 8925.

VI. There was no error in overruling the demurrer to the evidence. Conceding that plaintiff was a trespasser on the track, and that the agents of the defendant were only bound to exercise ordinary care to avoid injuring him, after his perilous position was discovered, it was still a question for the jury. It was their duty and province to ascertain, when this position was discovered, how far the engine was from the plaintiff when he fell upon the track in front of it; within what time and space the engine could have been stopped after seeing him fall; what means the engineer resorted to to check or stop the train; what success attended his efforts in this direction. To none of these questions, in view of the contradictory evidence in this case, could the trial judge respond, and much less can we. *Rine v. Railroad*, 100 Mo. 228.

VII. The court in plaintiff's first three instructions instructed the jury that, although plaintiff had no right upon the track, yet if defendant's servants discovered him in a dangerous and exposed condition in time to have stopped or slackened the speed of the train, in time to have averted the injury in safety to themselves by using the ordinary means and appliances for stopping the engine and train, and failed to exercise such ordinary care, defendant was liable. The criticism upon the three instructions receives its strength from attacking them in detail. It is very true that "ordinary care" should have been defined as such care as would be ordinarily used by prudent persons performing a like service under similar circumstances, but when the court instructed the jury that when the engineer saw the plaintiff fall upon the track immediately in front of his moving engine, *if he had time then to stop the engine with safety to himself and those on board the train*, it was his duty to do so, it exacted nothing more than would

be expected of any prudent man with humane instincts. We read *the three* instructions together, and while they might very well have been included *in one*, still we think they could not be understood as requiring any more than the use of ordinary care to save plaintiff from harm after he unexpectedly fell upon the track, and defendant had become aware of his peril—less than this would be a reproach to the law and our common humanity.

Nor do we think plaintiff's third instruction is inconsistent with his first or defendant's in requiring more than ordinary care. It is true that it uses the expression "any means," but this phrase is coupled with the other qualifying words, "consistent with their safety and that of the engine and cars" and "failed to use the means in their power consistent with their safety and that of the train in order to stop the train." Thus modified we do not think the instruction requires too much care in saving a human life, nor do we think it can be construed to mean that no allowance under any circumstances is to be made for the short time in which the engineer must determine his course of conduct. The engineer in this case saw the plaintiff, warned him by a danger signal; saw him fall; says he thought he was drunk, and says he himself was cool and not excited. Under such circumstances, the law did exact as ordinary prudence that he should use all means in his power consistent with his own safety and that of his train and passengers or crew to prevent killing plaintiff. This much the instruction demanded and no more, as we read it. The court gave an instruction for defendant correctly defining "ordinary care" and we cannot indulge the presumption that the jury ignored it, as it was in our opinion consistent with the plaintiff's said instructions.

VIII. Having obtained these three instructions we cannot comprehend the purpose of plaintiff in asking the fourth and fifth instructions given for him.

The court at plaintiff's request had in his first three and sixth instructions properly limited defendant's liability to the negligence of its servants-after they discovered the plaintiff was in a dangerous and exposed position. In his fourth and fifth he seeks to hold defendant liable from the moment plaintiff stepped on the track. This is not the law. When plaintiff stepped on the track, it was the engineer's duty to warn him, and this he did. The engineer had a right to presume that an adult would at once step off the track and avoid danger. He was not required to stop his train until he saw plaintiff was in a position of danger or peril. When he fell, then his position became perilous and the duty to stop the train by use of all the means consistent with the safety of himself and his train devolved upon the engineer and servants of defendant in charge of the train. The facts of this case show the necessity of making the distinction as to the getting on the track and his position after he had fallen. The use of the steam brake immediately upon his entering upon the track would unquestionably have stopped the train, but whether it would after plaintiff had fallen and it became evident he was in peril, was, at least, a debatable question, and one for the jury to find. These two instructions are inconsistent with the other three, and besides are not the law, being otherwise defective. They constitute reversible error.

IX. It only remains to note the contention of defendant that the court erred in giving any and all these instructions because inconsistent with the tenth instruction given for defendant, which exonerated defendant from all liability unless its agents or servants *wilfully* ran said engine upon and over plaintiff.

The giving of this tenth instruction was error but it was of defendant's own making. It is very true that it is utterly inconsistent with the instructions for plaintiff and defendant's other instructions, but had there been no other error the cause would not be reversed for this. Defendant had by this instruction required the plaintiff to go beyond negligence to prove wilfulness. It thus obtained an advantage to which it was not entitled, but as the jury responded even to that demand, defendant was estopped from complaining of an inconsistency of his own creation.

We do not deem it necessary to enter upon any discussion of the contention that defendant is only liable for wilful or wanton injury. The law of this state is too thoroughly well settled that the defendant is liable even to a trespasser, if it fail to use ordinary care to prevent injuring him, after discovering his peril.

It results, that the judgment must be reversed and the cause remanded for a new trial. SHERWOOD and BURGESS, JJ., concur.